**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 25-cv-23705-BLOOM/Sanchez**

SUNSTATE BANK

      Plaintiff,

v.

BBG REAL ESTATE SERVICES,

      Defendant.

_____/

## <u>ORDER ON MOTION TO DISMISS COUNT I OF THE COMPLAINT</u>

**THIS CAUSE** is before the Court upon Defendant BBG Real Estate Services' Motion to Dismiss Count I of the Complaint ("Motion"), ECF No. [6]. Plaintiff Sunstate Bank filed a Response in Opposition ("Response"), ECF No. [7], to which Defendant filed a Reply. ECF No. [10]. The Court has reviewed the Motion, the supporting and opposing submissions, the record in the case, and is otherwise fully advised. For the reasons that follow, Defendant's Motion is denied.

## I.    FACTUAL BACKGROUND

This action arises from a 2023 real estate appraisal Defendant in connection with a potential loan Plaintiff planned to offer for a property located at 10300-10350 Riverside Drive, Palm Beach Gardens, Florida ("Property"). ECF No. [1] at ¶ 1. Plaintiff is a commercial bank that "offers a full suite of commercial loan products, including real estate secured lending[.] *Id.* at ¶ 10. As part of its lending business, Plaintiff routinely relies on third-party appraisers "to assist in its due diligence process prior to issuing loan commitments." *Id.* at ¶ 11. Beginning around 2018, Plaintiff began using Defendant as a third-party appraiser. *Id.* at ¶ 14. According to Plaintiff, Defendant "knew and understood" that Plaintiff relied on Defendant's "appraisal reports in determining whether to approve or decline commercial real estate loan requests, in setting loan terms, in determining loan-

to-value rations, and in evaluating the sufficiency of the collateral securing the loan." *Id.* at ¶ 16. Accordingly, when the parties entered into an agreement in March 2023 to have Defendant appraise the Property, Defendant knew that in "deciding whether to extend a loan to the owner on the Property," Plaintiff would rely on Defendant's appraisal to determine the terms and financing structure of the loan. *Id.* at ¶ 17. Defendant nevertheless negligently provided Plaintiff with unreliable and erroneous information. *Id.*

Under the parties' agreement, Defendant was expected to determine the "Market Value," which was defined as "the most probable price which a property should bring in a competitive and open market . . .." *Id.* at ¶ 18. The agreement required that Defendant provide an appraisal report that "analyze[d] and report[ed] data on current revenues, expenses, and vacancies for the [P]roperty if it is and will continue to be income producing[.]" *Id.*

On March 8, 2023, Defendant issued its first appraisal on the Property (the "2023 Appraisal"), which "valued the Property at $10.1.M 'as is,' $11.2M 'as completed,' and $ 8.9M as 'dark value' [i.e., "the estimated value of a commercial  property under the assumption it was vacant and with no rental income"]." *Id.* at ¶ 20. Based on Defendant's 2023 Appraisal of the Property, and the resulting low loan-to-value ratio ("LTV"), Plaintiff gave the borrower a loan of $6,800,000.00.

In the beginning, there were no issues with the loan, but in January 2025, "the Borrower's sole tenant, Guidepost Montessori, ceased operations [o]n the Property and ceased making rental payments." *Id.* at ¶ 22. Consequently, Plaintiff was forced to downgrade the loan to "Substandard" (CRG 5). *Id.* Due to the material change in circumstances, Plaintiff decided to have Defendant conduct a second appraisal. *Id.* at ¶ 23. In the 2025 Appraisal, Defendant cut the value of the Property by nearly half its original 2023 assessment. As a result, Plaintiff "was required to further downgrade the loan to CRG 6–Substandard." *Id.* at ¶ 24.

2

Given the drastic change in value from the 2023 to 2025 Appraisal, Plaintiff spoke to Defendant's "senior representatives," who "specifically acknowledged" that the original appraiser from 2023, "made numerous errors" that led to the material overestimation of the value of the Property,  including "(1) wrongfully treating the tenant in the Property, Guidepost Montessori, as a national credit tenant, (2) mistakenly using Guidepost-leased comparable nationwide rather than locally leased school properties, and (3) failing to have the 2023 Appraisal reviewed in accordance with [Defendant's] internal review procedures before issuing the same." *Id.* at ¶¶ 25-26. Moreover, a direct comparison between the 2023 and 2025 appraisals reflected "material discrepancies that cannot be reasonably attributed to the two-year gap between them." *Id.* at ¶ 27. The discrepancies include:

(a) that the 2023 Appraisal applied a triple-net lease rate of $57.86 per square foot, while the 2025 Appraisal reduced that figure by 41% to $34 per square foot without any clear change in market conditions to justify such a drastic adjustment;

(b) that the 2023 Appraisal failed to disclose that the underlying rental agreement was not the result of an arm's length transaction, calling into question the reliability of its income assumptions; and

(c) that the 2023 Appraisal significantly overstated the impact of capital improvements by attributing $1.5 million in added value to the [P]roperty, while the 2025 Appraisal determined that those same improvements increased the [P]roperty's value by only $200,000 or approximately 13 percent of the value claimed in the earlier appraisal.

*Id.*

Plaintiff alleges that these discrepancies and errors amounted to both a violation of the "applicable professional appraisal standards, as well as Section E of the parties' 2023 engagement agreement." *Id.* at ¶ 28. Defendant also breached Section G of the parties' agreement by contravening industry standards in failing to account for the underlying lease's excessively high rate when compared to the rates charged by comparable properties in the local market. *Id*. at ¶ 29. Defendant additionally breached the agreement as well as its "professional standard of care" by

failing to comply with the Uniform Standards of Professional Appraisal Practice ("USPAP"). *Id.* at ¶ 30.

Plaintiff insists that had it received an accurate appraisal from Defendant in 2023, it would never have taken on the loan in the first place and now faces the risk of serious losses with no "meaningful avenues of recovery." *Id.* at ¶ 5. Consequently, Plaintiff filed the instant action, asserting both a negligence claim (Count I) and a breach of contract claim (Count II) against Defendant.

In the Motion, Defendant seeks to dismiss Plaintiff's negligence claim in Count I on the grounds that it violates the independent tort doctrine by relying on the same breach that Plaintiff relied upon in its breach of contract claim in Count II. *See* ECF No. [6]. Specifically, Defendant contends that because the parties' agreement requires that Defendant comply with the Uniform Standards of Professional Appraisal Practice ("USPAP") and Plaintiff alleges that Defendant breached that provision of the agreement, Plaintiff cannot also separately sue Defendant in tort for failure to adhere to those same professional obligations. *See* ECF No. [10] at 1-2.

Plaintiff responds that "Defendant's obligations under USPAP are separate and independent from any contractual duties" and would therefore exist even if the parties had never entered into an agreement for appraisal services. ECF No. [7] at 3. Therefore, because Defendant's breach of its professional obligation arises independently from its contractual obligations, Plaintiff maintains that it is not foreclosed from bringing a professional negligence claim in addition to its breach of contract claim. *Id.*

## II.   LEGAL STANDARD

### A.  Failure to State a Claim

To survive a motion to dismiss, under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "[t]he moving party bears the burden to show that the complaint should be dismissed."

*Sprint Sols., Inc. v. Fils-Amie*, 44 F. Supp. 3d 1224, 1228 (S.D. Fla. 2014) (quoting *Mendez-Arriola v. White Wilson Med. Ctr. PA*, N. 09-495, 2010 WL 3385356, at *3 (N.D. Fla. Aug. 25, 2010)). A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While a complaint "does not need detailed factual allegations," it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining that Rule 8(a)(2)'s pleading standard demands more than an unadorned, the defendant unlawfully-harmed-me accusation"). A complaint may not rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. As a general rule, when reviewing a motion to dismiss, a court must accept the plaintiff's allegations as true and evaluate all plausible inferences derived from those facts in favor of the plaintiff. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012). Although the Court is required to accept all of the factual allegations as true, this tenet is inapplicable to legal conclusions. *Iqbal*, 556 U.S. at 678.

In considering a Rule 12(b) motion to dismiss, the court is ordinarily limited to the facts contained in the complaint and attached exhibits. *See Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006). However, it is well-settled that "where the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require

conversion of the motion into a motion for summary judgment." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997); *see also Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999) (noting that "a document central to the complaint that the defense appends to its motion to dismiss is also properly considered").

## III.  DISCUSSION

"Under Florida's independent tort doctrine, it is well settled that a plaintiff may not recast causes of action that are otherwise breach-of-contract claims as tort claims." *BluestarExpo, Inc. v. Enis*, 568 F. Supp. 3d 1332, 1353 (S.D. Fla. 2021) (quoting *Altamonte Pediatric Associates, P.A. v. Greenway Health, LLC*, 8:20-CV-604-T-33JSS, 2020 WL 5350303, at *5 (M.D. Fla. Sept. 4, 2020)). The doctrine stems from "[f]undamental contractual principles . . . [that] bar a tort claim where the offending party has committed no breach of duty independent of a breach of its contractual obligations." *Freeman v. Sharpe Res. Corp.*, No. 6:12-cv-1584, 2013 WL 2151723, at *8 (M.D. Fla. May 16, 2013) (citing *Tiara Condo. Association, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 408 (Fla. 2013) (Pariente, J., concurring)). However, "where a breach of contract is combined with some other conduct amounting to an independent tort, the breach can be [properly] considered [as a separate] negligence" claim. *Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 947 (11th Cir. 2014); *see also HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996) ("Where a contract exists, a tort action will lie for either intentional or negligent acts considered to be independent from acts that breached the contract.").

Here, Defendant argues that Plaintiff's negligence claim violates the independent tort doctrine. ECF No. [6] at 5. Defendant asserts that both Plaintiff's negligence claim and its breach of contract claim arise from the same alleged valuation errors contained in Defendant's 2023 appraisal of the Property. *Id.* at 2. Additionally, Plaintiff's negligence claim incorporates all the same facts as its breach of contract claim, including allegations concerning specific contractual

provisions Defendant breached during the appraisal process—namely, the requirement that Defendant comply with the applicable professional standards for appraisers, including the USPAP. *See id.* at 2, 5. Accordingly, Defendant contends that Plaintiff's negligence claim fails to establish a duty or obligation that is independent and distinct from the contractual obligations that Plaintiff alleges Defendant breached in its breach of contract claim and, as such, Plaintiff's negligence claim must be dismissed. *Id.* at 5.

Plaintiff responds that the independent tort doctrine "does not bar claims that are based on duties that exist independently of the contract." ECF No. [7] at 2. Plaintiff therefore argues that the independent tort doctrine does not apply here because its negligent claim "involves a duty that exists wholly independent of the February 16, 2023 Engagement Agreement." *Id.* at 3. According to Plaintiff, the USPAP rules are professional performance standards that are imposed by regulation, not by contract, and exist, regardless of any contractual relationship. *Id.*

The Court finds that the independent tort doctrine does not preclude Plaintiff from asserting its negligence claim here.[1] There is no dispute among the parties, nor under Florida law, that Defendant provides "professional services." *See Fed. Deposit Ins. Corp. v. Howard*, No. 3:12-CV-578-J-34JRK, 2013 WL 12097642, at *12 (M.D. Fla. Sept. 5, 2013) ("An appraiser renders a professional service and is a professional[.]"). "Where the negligent party is a professional, the law imposes a duty to perform the requested services in accordance with the standard of care used

---

[1] While Plaintiff refers to the claim in Count I as a "negligence" claim, it is clear based on Plaintiff's allegations that it is specifically asserting a professional negligence claim. Indeed, Plaintiff's theory of liability is premised on the fact that Defendant's owed a professional "duty of care to Plaintiff to conduct the appraisal in accordance with applicable industry standards, including the Uniform Standards of Professional Appraisal Practice." ECF No. [1-1] at ¶ 39; *see Carrington Cap. Mgmt., LLC v. Wallace*, No. 8:15-CV-1406-T-36AAS, 2016 WL 6778883, at *4 (M.D. Fla. Nov. 16, 2016) (treating a claim labeled as ordinary negligence as a professional negligence claim because, without the alleged professional malpractice allegations, the plaintiff would not have had a negligence cause of action under any theory) (citing *Sheils v. Jack Eckerd Corp.*, 560 So. 2d 361 (Fla. 2d DCA 1990)).

by similar professionals in the community under similar circumstances." *Moransais v. Heathman*, 744 So. 2d 973, 975-76 (Fla. 1999). This duty is owed to the party receiving the professional's services regardless of whether a valid contract exists. *Auto-Owners Ins. Co. v. Triple P. Const. Inc.*, 08-cv-154, 2009 WL 1457115, at *1 (N.D. Fla. May 23, 2009) ("[T]he law imposes a duty on a professional separate and apart from any contractual obligation"). Accordingly, courts have consistently found that "claims for professional negligence stand separate and apart from a claim for breach of contract." *RCG Advances, LLC v. Feingold*, No. 23-81128-CIV, 2024 WL 5375598, at *2 (S.D. Fla. Oct. 25, 2024); *see also*; *Martinez v. QBE Specialty Ins. Co.*, No. 8:18-CV-263-T-36AAS, 2018 WL 4354831, at *4 (M.D. Fla. Sept. 12, 2018) ("The Florida Supreme Court has held that a professional negligence claim against a professional may constitute a tort independent of a breach of contract claim."). Therefore, although one of the alleged breaches of the parties' agreement was Defendant's "failure to comply with USPAP," the professional duties Defendant owed to Plaintiff as an appraiser were freestanding obligations that existed beyond the contract and are thus separately and independently enforceable in tort. ECF No. [1-1] at ¶ 30; *see Nguyen v. Raymond James & Assocs., Inc.*, No. 8:20-CV-195-CEH-AAS, 2021 WL 6091094, at *8 (M.D. Fla. Dec. 23, 2021) (declining to apply the independent tort doctrine where the contract was not the sole basis for the professional obligations); *RCG Advances, LLC*, 2024 WL 5375598, at *3 (concluding that "Defendants' legal obligations as [professionals] [were] separate and distinct from Defendants' contractual obligations"). Consequently, the independent tort doctrine does not apply, and Plaintiff has therefore adequately stated a claim for which relief may be granted in Count I.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion, **ECF No. [6]**, is **DENIED**.

8

2.  Defendant shall file an answer to Count I of the Complaint no later than **March 20, 2026.**[2]

**DONE AND ORDERED** in Chambers at Miami, Florida, on March 9, 2026.

_____

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record

---

[2] The Court notes that Defendant has already filed an answer to Count II of the Complaint as a part of the instant Motion to Dismiss. *See* ECF No. [6] at 5.

9